IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| SIGNATURE FINANCIAL LLC, d/b/a SIGNATURE FINANCIAL AND LEASING LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>SAMANTHA S. LINDSAY, M.D., P.A., D/B/A FAMILY FIRST WELLNESS, and SAMANTHA S. LINDSAY,<br><br>    *Defendants.* | CASE NO. 8:22-cv-1906 |

## COMPLAINT

Plaintiff Signature Financial LLC, d/b/a Signature Financial and Leasing LLC ("Signature" or "Plaintiff"), by and through its attorneys, complaining of defendants, Samantha S. Lindsay, M.D., P.A., d/b/a Family First Wellness ("FFW"), and Samantha S. Lindsay ("Lindsay", and together with FFW, collectively, the "Defendants"), and for causes of action would respectfully assert as follows:

## THE PARTIES

1. Signature is a New York limited liability company maintaining an office for the transaction of business in Melville, New York. The sole member of Signature is Signature Bank, which is a banking corporation duly organized and existing under the laws of the State of New York, with its corporate headquarters and principal place of business in New York. Therefore, since Signature Bank is a citizen of the State of New York, Signature is not a citizen of the State of Florida for diversity jurisdiction purposes.

2. FFW is a corporation organized and existing under the laws of the State of Florida, with its principal place of business located at 16541 Pointe Village Drive, Suite 211, Lutz, Florida 33558.  Therefore, since FFW is a Florida corporation, FFW is a citizen of the State of Florida for diversity jurisdiction purposes.

3. Lindsay is an individual who is domiciled in the State of Florida and whose true, fixed, and permanent home, as evidenced by driver's license records demonstrating her intent to remain, is located within the Middle District of Florida and located at 1652 Westerham Loop, Trinity, Florida 34655.  Therefore, since Lindsay is domiciled in Florida, Lindsay is a citizen of the State of Florida for diversity jurisdiction purposes.

## JURISDICTION

4. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy is in excess of $75,000.00, exclusive of interest and costs, and the Plaintiff and Defendants are citizens of different states.

## VENUE

5. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(1) because it is the judicial district in which all Defendants reside.

## FIRST COUNT – BREACH OF CONTRACT
### (AGAINST FFW)

6. On or about May 25, 2021, FFW, as debtor, entered into that certain Equipment Finance Agreement (as any time modified and/or amended, the "Agreement") with MMP Capital Inc., d/b/a Me and My Pal, Inc. ("MMP"), as creditor and secured party, whereby FFW agreed to purchase a certain Emsculpt Neo Workstation bearing serial number 89900B001214 (the "Collateral"), as more particularly described in and subject to the Agreement, and MMP agreed to finance the purchase of the Collateral by FFW.  (A true and correct copy of the Agreement is

attached hereto as **Exhibit "1"** and the terms and conditions thereof are incorporated herein by reference.)

7. Pursuant to the Agreement, FFW agreed to make sixty (60) consecutive monthly installment payments in the amount of $7,066.50 to MMP (payments to be due on the first day of each month), plus any applicable taxes and other amounts due and owing under the Agreement, as well as a documentation fee in the amount of $950.00.

8. In accordance with the terms of the Agreement, FFW granted to MMP a security interest in and to the Collateral, all accession and additions thereto, replacements or substitutions thereof, and all proceeds, to secure payment of the obligations of FFW to MMP under the Agreement and all other then present and future indebtedness of FFW to MMP.

9. MMP duly perfected its security interest in the Collateral by filing a UCC-1 Financing Statement with the Department of the State of the State of Florida. (A true and correct copy of MMP's UCC-1 Financing Statement (the "UCC-1") with respect to the Collateral is attached hereto as **Exhibit "2"** and is incorporated herein by reference.)

10. On or about July 1, 2021, MMP assigned all of its right, title, and interest in and to the Agreement, the Collateral, and the Guarantees (as defined herein) to Signature. Specifically, MMP assigned the remaining fifty-nine (59) monthly installment payments due under the Agreement from FFW to Signature. (True and correct copies of the Assignment, Notice of Acknowledgment of Assignment of Loan, and Form of Notice of Assignment sent by MMP to FFW informing FFW of MMP's assignment of the Agreement, Collateral, and Guarantees to Signature are attached hereto as **Exhibit "3"** and the terms and conditions thereof are incorporated herein by reference.)

11. As a result of the foregoing assignment, Signature became the successor-in-interest to MMP with respect to the Agreement, the Collateral, and the Guarantees.

12. Signature subsequently filed an Amendment to the UCC-1 (the "<u>UCC Amendment</u>") with the Department of the State of the State of Florida in order to change the name of the secured party from MMP to Signature. (A true and correct copy of Signature's UCC Amendment with respect to the Collateral is attached hereto as **Exhibit "4"** and is incorporated herein by reference.)

13. FFW accepted delivery of the Collateral and thereafter commenced making payments to Signature under the terms and conditions of the Agreement. (A true and correct copy of the Equipment Acceptance Certificate with respect to the Collateral is attached hereto as **Exhibit "5"** and the terms and conditions thereof are incorporated herein by reference.)

14. Signature is currently the holder and owner of the Agreement, as well as the indebtedness due thereunder, with a properly perfected security interest and lien in and to the Collateral.

15. The Agreement provides, <u>inter alia</u>, that FFW was to make each monthly installment payment as it came due, and that FFW shall be in default in the event of any failure to make any payment when due under the Agreement.

16. The Agreement provides further, <u>inter alia</u>, that upon the occurrence of an event of default, Signature may declare all sums due and to become due under the Agreement immediately due and payable, with all future payments due under the Agreement discounted at the lower of three percent (3%) or the then-current discount rate of the Federal Reserve Bank of New York as calculated by Signature.

17. The Agreement also provides, <u>inter alia</u>, that any amount not paid when due under the Agreement is subject to a late charge of the greater of fifty dollars ($50.00) or ten percent (10%) of such delinquent amount, but not more than the highest rate allowed by law.[1]

18. In accordance with the Agreement, FFW made ten (10) monthly installment payments of $7,066.50 to Signature through and including the installment due for the month of May 2022.

19. FFW materially breached and defaulted upon the Agreement when it failed to make the required monthly payments due to Signature for the months of June 2022, July 2022, and August 2022 (the "<u>Default</u>"), resulting in damages to Signature.[2]

20. By reason of the Default and in accordance with the terms of the Agreement, the entire balance of all unpaid installments, monies, and other amounts due under the terms of the Agreement was declared to be immediately due and payable to Signature (collectively, the "<u>Obligations</u>").

21. As of August 8, 2022, the total of the Obligations was in an amount not less than $338,007.87, plus interest at the per diem rate of $13.83 from and after August 8, 2022, attorneys' fees, costs and any other amounts, including, without limitation, applicable taxes and any costs incurred and to be incurred by Signature to recover the Collateral, due under the terms of the Agreement.

22. Signature has performed all terms and conditions precedent on its part, to the extent that there are any, to be performed pursuant to the Agreement.

---

[1] While the Agreement specifically provides for late charges of the greater of fifty dollars ($50.00) or ten percent (10%) of such delinquent amount, Signature only assessed late charges of five percent (5%) of such delinquent amount.

[2] Payments were due on June 1, 2022, July 1, 2022, and August 1, 2022.

23. Despite the foregoing and demand for payment of the Obligations by Signature, FFW has failed to pay any of the Obligations to Signature.

24. By reason of the Default and FFW's failure to pay the Obligations to Signature, FFW materially breached and defaulted under the terms of the Agreement, resulting in damages to Signature.

25. The Agreement provides that in the event of a default thereunder, FFW is liable for all costs incurred by Signature in enforcing its rights, including, without limitation, attorneys' fees, costs of repossession, repair, storage, and remarketing of the Collateral.

26. As a result of the Default and FFW's failure to pay the Obligations to Signature, Signature has incurred attorneys' fees, costs, expenses, and court costs, and will continue to incur further legal fees, costs, and expenses in the enforcement of its rights and remedies. Accordingly, Signature seeks an award for attorneys' fees and costs incurred and to be incurred, including, without limitation, for the prosecution of this action against FFW.

27. As of August 8, 2022, FFW was liable to Signature for damages in an amount not less than $338,007.87, plus interest at the per diem rate of $13.83 from and after August 8, 2022, attorneys' fees, costs and any other amounts, including, without limitation, applicable taxes and any costs incurred and to be incurred by Signature to recover the Collateral, due under the terms of the Agreement.

**WHEREFORE**, by reason of the foregoing, Signature demands judgment in its favor and against FFW for damages in the amount of $338,007.87, plus interest at the per diem rate of $13.83 from and after August 8, 2022, attorneys' fees, costs and any other amounts, including, without limitation, applicable taxes and any costs incurred and to be incurred by Signature to recover the Collateral, due under the terms of the Agreement.

## SECOND COUNT – BREACH OF CONTRACT
### (AGAINST LINDSAY)

28. Signature repeats and realleges the foregoing allegations of this Complaint as if fully set forth herein.

29. On or about May 25, 2021, FFW, as debtor, entered into the Agreement with MMP, as creditor and secured party, whereby FFW agreed to purchase the Collateral and MMP agreed to finance the purchase of the Collateral by FFW. (*See* Ex. 1, incorporated herein by reference.)

30. Pursuant to the Agreement, FFW agreed to make sixty (60) consecutive monthly installment payments in the amount of $7,066.50 to MMP (payments to be due on the first day of each month), plus any applicable taxes and other amounts due and owing under the Agreement, as well as a documentation fee in the amount of $950.00.

31. In accordance with the terms of the Agreement, FFW granted to MMP a security interest in and to the Collateral, all accession and additions thereto, replacements or substitutions thereof, and all proceeds, to secure payment of the obligations of FFW to MMP under the Agreement and all other then present and future indebtedness of FFW to MMP.

32. MMP duly perfected its security interest in the Collateral by filing the UCC-1 with the Department of the State of the State of Florida. (*See* Ex. 2, incorporated herein by reference.)

33. In order to induce MMP to enter into the Agreement, and for other good and valuable consideration, Lindsay executed that certain Guaranty (as any time modified and/or amended, the "Guaranty") and that certain Individual Guaranty (as any time modified and/or amended, the "Individual Guaranty", and together with the Guaranty, collectively, the "Guarantees"), pursuant to which Lindsay unconditionally guaranteed to MMP, the prompt

payment and performance of the Obligations of FFW due under the Agreement.  (A true and correct copy of the Individual Guaranty is attached hereto as **Exhibit "6"** and the terms and conditions thereof are incorporated herein by reference; the Guaranty is included as part of the Agreement, *see* Ex. 1 at 2.)

34. On or about July 1, 2021, MMP assigned all of its right, title, and interest in and to the Agreement, the Collateral, and the Guarantees to Signature.  Specifically, MMP assigned the remaining fifty-nine (59) monthly installment payments due under the Agreement from FFW to Signature.  (*See* Ex. 3, incorporated herein by reference.)

35. As a result of the foregoing assignment, Signature became the successor-in-interest to MMP with respect to the Agreement, the Collateral, and the Guarantees.

36. Signature subsequently filed the UCC Amendment with the Department of the State of the State of Florida in order to change the name of the secured party from MMP to Signature.  (*See* Ex. 4, incorporated herein by reference.)

37. FFW accepted delivery of the Collateral and thereafter commenced making payments to Signature under the terms and conditions of the Agreement.  (*See* Ex. 5, incorporated herein by reference)

38. Signature is currently the holder and owner of the Agreement and Guarantees, as well as the indebtedness due thereunder, with a properly perfected security interest and lien in and to the Collateral.

39. The Agreement provides, <u>inter alia</u>, that FFW was to make each monthly installment payment as it came due, and that FFW shall be in default in the event of any failure to make any payment when due under the Agreement.

40. The Agreement provides further, <u>inter alia</u>, that upon the occurrence of an event of default, Signature may declare all sums due and to become due under the Agreement immediately due and payable, with all future payments due under the Agreement discounted at the lower of three percent (3%) or the then-current discount rate of the Federal Reserve Bank of New York as calculated by Signature.

41. The Agreement also provides, <u>inter alia</u>, that any amount not paid when due under the Agreement is subject to a late charge of the greater of fifty dollars ($50.00) or ten percent (10%) of such delinquent amount, but not more than the highest rate allowed by law.[3]

42. In accordance with the Agreement, FFW made ten (10) monthly installment payments of $7,066.50 to Signature through and including the installment due for the month of May 2022.

43. FFW materially breached and defaulted upon the Agreement when it failed to make the required monthly payments due to Signature for the months of June 2022, July 2022, and August 2022, resulting in damages to Signature.[4]

44. By reason of the Default and in accordance with the terms of the Agreement, the Obligations were declared to be immediately due and payable to Signature.

45. As of August 8, 2022, the total of the Obligations was in an amount not less than $338,007.87, plus interest at the per diem rate of $13.83 from and after August 8, 2022, attorneys' fees, costs and any other amounts, including, without limitation, applicable taxes and

---

[3] While the Agreement specifically provides for late charges of the greater of fifty dollars ($50.00) or ten percent (10%) of such delinquent amount, Signature only assessed late charges of five percent (5%) of such delinquent amount.

[4] Payments were due on June 1, 2022, July 1, 2022, and August 1, 2022.

any costs incurred and to be incurred by Signature to recover the Collateral, due under the terms of the Agreement.

46. Signature has performed all terms and conditions precedent on its part, to the extent that there are any, to be performed pursuant to the Agreement.

47. Despite the foregoing and demand for payment of the Obligations by Signature, FFW has failed to pay any of the Obligations to Signature.

48. By reason of the Default and FFW's failure to pay the Obligations to Signature, FFW materially breached and defaulted under the terms of the Agreement, resulting in damages to Signature.

49. The Agreement provides that in the event of a default thereunder, FFW is liable for all costs incurred by Signature in enforcing its rights, including, without limitation, attorneys' fees, costs of repossession, repair, storage, and remarketing of the Collateral.

50. As a result of the Default and FFW's failure to pay the Obligations to Signature, Signature has incurred attorneys' fees, costs, expenses, and court costs, and will continue to incur further legal fees, costs, and expenses in the enforcement of its rights and remedies. Accordingly, Signature seeks an award for attorneys' fees and costs incurred and to be incurred, including, without limitation, for the prosecution of this action against FFW.

51. By reason of the Default and FFW's failure to pay the Obligations to Signature, Signature has suffered damages in an amount not less than $338,007.87, plus interest at the per diem rate of $13.83 from and after August 8, 2022, attorneys' fees, costs and any other amounts, including applicable taxes and any costs incurred and to be incurred by Signature to recover the Collateral, due under the terms of the Agreement, all of which continue to accrue.

52. Signature has made demand on Lindsay for payment of the Obligations of FFW to Signature arising under the Agreement.

53. Despite the Default and demand for payment of the Obligations by Signature, Lindsay has failed to pay any of the Obligations to Signature.

54. By reason of Lindsay's failure to pay any of the Obligations to Signature, Lindsay materially breached and defaulted under the terms of the Guarantees, resulting in damages to Signature.

55. Signature has performed all terms and conditions precedent on its part, to the extent that there are any, to be performed pursuant to the Guarantees.

56. The Guarantees provide that Lindsay is liable for all costs incurred by Signature in enforcing its rights under the Agreement and Guarantees and collecting the amounts due under such agreements, including, without limitation, attorneys' fees and litigation costs.

57. As a result of Lindsay's default upon the Guarantees, Signature has incurred attorneys' fees, expenses, and court costs and will continue to incur further legal expenses in the enforcement of its rights and remedies. Accordingly, Signature seeks an award for attorneys' fees and costs incurred for the prosecution of its claims under the Guarantees in this action against Lindsay.

58. As of August 8, 2022, Lindsay was liable to Signature for damages in an amount not less than $338,007.87, plus interest at the per diem rate of $13.83 from and after August 8, 2022, attorneys' fees, costs and any other amounts, including, without limitation, applicable taxes and any costs incurred and to be incurred by Signature to recover the Collateral, due under the terms of the Agreement and Guarantees.

**WHEREFORE**, by reason of the foregoing, Signature demands judgment in its favor and against Lindsay for damages in the amount of $338,007.87, plus interest at the per diem rate of $13.83 from and after August 8, 2022, attorneys' fees, costs and any other amounts, including, without limitation, applicable taxes and any costs incurred and to be incurred by Signature to recover the Collateral, due under the terms of the Agreement and Guarantees.

**THIRD COUNT - REPLEVIN**
**(AGAINST FFW)**

59. Signature repeats and realleges the foregoing allegations of this Complaint as if fully set forth herein.

60. This claim is brought pursuant to Florida Statute, Title VI, Chapter 78 et. seq. and Rule 64 of the Federal Rules of Civil Procedure.

61. On or about May 25, 2021, FFW, as debtor, entered into the Agreement with MMP, as creditor and secured party, whereby FFW agreed to purchase the Collateral and MMP agreed to finance the purchase of the Collateral by FFW. (*See* Ex. 1, incorporated herein by reference.)

62. Pursuant to the Agreement, FFW agreed to make sixty (60) consecutive monthly installment payments in the amount of $7,066.50 to MMP (payments to be due on the first day of each month), plus any applicable taxes and other amounts due and owing under the Agreement, as well as a documentation fee in the amount of $950.00.

63. In accordance with the terms of the Agreement, FFW granted to MMP a security interest in and to the Collateral, all accession and additions thereto, replacements or substitutions thereof, and all proceeds, to secure payment of the obligations of FFW to MMP under the Agreement and all other then present and future indebtedness of FFW to MMP.

64. MMP duly perfected its security interest in the Collateral by filing the UCC-1 with the Department of the State of the State of Florida. (*See* Ex. 2, incorporated herein by reference.)

65. On or about July 1, 2021, MMP assigned all of its right, title, and interest in and to the Agreement, the Collateral, and the Guarantees to Signature. Specifically, MMP assigned the remaining fifty-nine (59) monthly installment payments due under the Agreement from FFW to Signature. (*See* Ex. 3, incorporated herein by reference.)

66. As a result of the foregoing assignment, Signature became the successor-in-interest to MMP with respect to the Agreement, the Collateral, and the Guarantees.

67. Signature subsequently filed the UCC Amendment with the Department of the State of the State of Florida in order to change the name of the secured party from MMP to Signature. (*See* Ex. 4, incorporated herein by reference.)

68. FFW accepted delivery of the Collateral and thereafter commenced making payments to Signature under the terms and conditions of the Agreement. (*See* Ex. 5, incorporated herein by reference.)

69. Signature is currently the holder and owner of the Agreement, as well as the indebtedness due thereunder, with a properly perfected security interest and lien in and to the Collateral.

70. The Agreement provides, inter alia, that FFW was to make each monthly installment payment as it came due, and that FFW shall be in default in the event of any failure to make any payment when due under the Agreement.

71. The Agreement provides further, inter alia, that upon the occurrence of an event of default, Signature may declare all sums due and to become due under the Agreement

immediately due and payable, with all future payments due under the Agreement discounted at the lower of three percent (3%) or the then-current discount rate of the Federal Reserve Bank of New York as calculated by Signature.

72. The Agreement also provides, inter alia, that any amount not paid when due under the Agreement is subject to a late charge of the greater of fifty dollars ($50.00) or ten percent (10%) of such delinquent amount, but not more than the highest rate allowed by law.[5]

73. In accordance with the terms of the Agreement, upon the event of a default by FFW under the Agreement, Signature is entitled to take possession of the Collateral.

74. In accordance with the Agreement, FFW made ten (10) monthly installment payments of $7,066.50 to Signature through and including the installment due for the month of May 2022.

75. FFW materially breached and defaulted upon the Agreement when it failed to make the required monthly payments due to Signature for the months of June 2022, July 2022, and August 2022, resulting in damages to Signature.[6]

76. By reason of the Default and in accordance with the terms of the Agreement, the Obligations were declared to be immediately due and payable to Signature.

77. As a result of the Default and FFW's failure to pay the Obligations to Signature, Signature is entitled to take possession of the Collateral.

78. The Collateral is being wrongfully detained by FFW.

79. Upon information and belief, FFW is in possession and control of the Collateral.

---

[5] While the Agreement specifically provides for late charges of the greater of fifty dollars ($50.00) or ten percent (10%) of such delinquent amount, Signature only assessed late charges of five percent (5%) of such delinquent amount.

[6] Payments were due on June 1, 2022, July 1, 2022, and August 1, 2022.

80. Upon information and belief, the Collateral is located at 16541 Pointe Village Drive, Suite 211, Lutz, Florida 33558.

81. Upon information and belief, the estimated value of the Collateral is approximately $216,750.00.

82. Demand is hereby made by Signature for the immediate possession of the Collateral.

83. Due to the Default, Signature's right to possession of the Collateral is superior to any right FFW or Lindsay may have in the Collateral and Defendants' continued detention thereof is wrongful.

84. Upon information and belief, the Collateral has not been taken for any tax, assessment or fine levied by virtue of any laws of the State of Florida.

85. Upon information and belief, the Collateral has not been taken under an execution or attachment against the property of Signature.

86. Upon information and belief, FFW is refusing to surrender the Collateral to Signature in order to avoid repossession by Signature and in order that FFW continue to profit from its use.

**WHEREFORE**, by reason of the foregoing, Signature respectfully requests that this Court enter a judgment of possession awarding Signature the right to replevin and to take immediate possession of the Collateral wherever it may be located.

Dated: August 19, 2022

Respectfully submitted,

PRYOR CASHMAN LLP

By: s/ *Hans H. Hertell*
Hans H. Hertell
Florida Bar No. 71969
Pryor Cashman LLP
255 Alhambra Circle, 8th Floor
Miami, FL 33134
Tel: (786) 582-3011
Fax: (786) 582-3004
Email: hhertell@pryorcashman.com
ksuarez@pryorcashman.com

*Attorney for Signature Financial LLC, d/b/a Signature Financial and Leasing LLC*